**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MINERVA GONZALEZ,

    Plaintiff,

v.                                                                                                                     CV 11-0628 WPL

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    Minerva Gonzalez filed applications with the Social Security Administration ("SSA") alleging that several physical and psychological impairments rendered her unable to work beginning in October 2004. (Administrative Record ("AR") 13, 33, 124, 129.) The Commissioner of Social Security denied her applications after several rounds of review (AR 1-3, 18-19), and Gonzalez's appeal from that decision brought the case before me.[1] Gonzalez has filed a Motion to Reverse or Remand (Doc. 17), the Commissioner has responded (Doc. 19), and Gonzalez has replied (Doc. 20). Pursuant to 28 U.S.C § 636(c)(1) and FED. R. CIV. P. 73, the parties consented to have me serve as the presiding judge and enter final judgment. After having read and carefully considered the record, pleadings, and relevant law, I find that the Commissioner's decision is not supported by substantial evidence and remand the case for further proceedings consistent with this Order.

**STANDARD OF REVIEW**

    In reviewing the Administrative Law Judge's ("ALJ") decision, I must determine whether

---

[1] Gonzalez filed a subsequent application for benefits which was granted as of the day after the Administrative Law Judge's decision in this case. (Doc. 17 Ex. A.)

it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is only a scintilla of evidence supporting it. *Hamlin*, 365 F.3d at 1214 (quotation omitted). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.* (quotation omitted).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall*, 561 F.3d at 1051-52; 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or nondisability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, she is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing

the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Gonzalez is a forty year old woman with two years of college education who worked for seven years as a medical lab assistant. (*See* AR 153, 161, 163.) She alleges that she is disabled due to atypical facial pain, a seizure disorder, sleep apnea, depression and anxiety. (*See* AR 152, 196.) She asserts that her disability rendered her unable to work beginning October 1, 2004. (AR 152.)

Gonzalez's medical history presents a sad story of happenstance. In 2002, she had dental surgery to remove an impacted wisdom tooth. (*See* AR 264, 371.) Something about that surgery triggered the onset of extreme pain in her face. (*See id.*) Doctors attempted to treat the pain with medications and referred her to several different doctors to determine her candidacy for various surgical interventions. (*See* AR 264, 266, 268.) She was referred to a neurologist, Pawan Jain, M.D., on April 3, 2003, and she has seen him regularly since that time. (AR 371, 445.) The pain has been variously diagnosed as atypical trigeminal neuralgia and atypical facial pain. (AR 445, 250.) Doctors have been unable to explain the etiology of the pain. (*See* AR 251, 266.)

In late 2004, due either to the pain or to a combination of medications, Gonzalez began having seizures. (*See* AR 264, 266, 295, 369.) Though a CT scan and an MRI[2] showed a normal brain, an EEG was abnormal with "bilateral diffuse spikes." (AR 307, 445.) In 2007, Gonzalez and her husband reported that she was experiencing seizures two to three times each week and that, after a seizure, she is extremely fuzzy, struggles with memory, and can barely function. (AR 167-68, 179-80.) Dr. Jain witnessed a seizure during one of Gonzalez's appointments (*see* AR 281), and emergency medical technicians have also witnessed her seizures. (*See* AR 287.) She was

---

[2] Two normal MRIs in the record, from April 28, 2003 and May 7, 2003, were completed prior to the onset of seizures but did show that she had no obvious cause underlying her pain. (AR 254-55.)

hospitalized for seizures on two occasions, in December of 2004 and in January of 2007. (AR 279-82, 286-90, 295-298.) The diagnosis for her seizures is a nonspecific seizure disorder. (AR 445.) Dr. Jain has also diagnosed her with facial muscle spasms, which he witnessed, called right hemifacial spasm. (AR 445.)

Because of her reported fatigue and difficulty sleeping, she was referred to a sleep lab, and testing revealed that she has sleep apnea. (AR 617.) A CPAP machine was prescribed to help her breathe while sleeping. (*Id.*)

As a result of the pain and seizures, Gonzalez has developed depression and anxiety. (*See* AR 295.) She began treatment for these issues at Milagro Community Care in 2007; she attends counseling sessions every other week and is treated with medications. (*See* AR 463, 472-73, 621-30, 692-96, 698.) Her counselor, Jonathon Doherty, L.M.H.C., rated her Global Assessment of Functioning ("GAF")[3] score as between forty-five and fifty throughout 2007 and 2008. (AR 463, 467.) However, the doctor prescribing her medications assessed a GAF score between fifty and sixty-five throughout 2008 and in early 2009. (AR 645-50, 697.) During her counseling sessions, Gonzalez often described her sadness and anxiety as related to her physical impairments and reduced ability to function. (*See* AR 463, 467, 623, 694-95.)

Gonzalez has been treated with a variety of medications to control her pain, seizures, anxiety, depression, and side effects from other medications. Most recently, Gonzalez reported that she was

---

[3] A GAF score is a rating assigned by the mental health provider to indicate the person's psychological, social and occupational functioning. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). A GAF score between thirty-one and forty indicates some impairment in reality testing or communication or a major impairment in several areas of functioning. *Id.* A GAF score between forty-one and fifty indicates serious symptoms or a serious impairment in social or occupational functioning. *Id.* A GAF score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in functioning. *Id.*

4

taking methadone for pain, Xanax and Lexapro for depression and anxiety, Keppra for seizures, and zolpidem for insomnia. (AR 233.) She was also taking promethazine and GlycoLax to remedy the side effects of her medications, which include upset stomach and constipation. (*Id.*) She receives Botox injections from Dr. Jain to control her muscle spasms and to help with the pain. (AR 35.) Gonzalez's doctors have expressed some concern about the possibility that she could be dependent on her narcotic pain medications. (AR 38.)

In addition to the medications, various interventions have been attempted and several tests have been completed. MRIs from 2003 and a three phase bone scan from 2005 showed no abnormality in the focal regions. (AR 254-55, 273.) A trigeminal nerve block was completed by David Masel, M.D., in 2004, but that treatment failed. (AR 445-46.) She was referred to Anuradha Gupta, M.D., to discuss gamma knife radiosurgery for her facial pain on June 4, 2003, and he advised her that the odds of the surgery helping her are fifty percent. (AR 251.) In mid-2005, Gonzalez was referred to Marcus Keep, M.D., to again determine whether she was a candidate for gamma knife surgery; he concluded that "any neurosurgical intervention will be unlikely to help this patient." (AR 269.)

Gonzalez applied for disability insurance benefits and supplemental security income on May 16, 2007 based on atypical facial pain, depression and seizures beginning October 1, 2004. (AR 72-76, 82, 85, 137.) Dr. Jain provided a report as to her functioning based primarily on her physical conditions. (AR 445-48.) He opined that she should completely avoid all environmental hazards because they trigger pain and due to the side effects of her medications; that she should never drive passengers, reach forward or overhead, push, pull, twist, bend, stoop, squat, or use stairs, ladders, trucks, cars or heavy or electrical equipment due to seizures; that she is somewhat limited in standing, sitting, and crammed or unusual positions because of her seizure disorder; and that she can

5

never lift zero to fifteen pounds because of the seizure disorder and the risk of fall and injury. (AR 446-47.) He stated that she is permanently disabled and would be a high risk for her employer. (AR 448.) Regarding her future treatment, he stated that the course of Gonzalez's disease had not changed despite treatment, that all possible treatment had failed, and that it is very difficult to treat pain. (AR 446.)

She was referred to a consultative examiner for an evaluation of her mental impairments. Consulting examiner Juan N. Sosa, Ph.D., interviewed Gonzalez and conducted a mental status examination on September 28, 2007. (AR 459-60.) He did not indicate that he reviewed her medical records. (*Id.*) He noted that Gonzalez reported being in a lot of pain so wanted the appointment to end quickly. He also found that, though she answered his questions, she "appeared to be unwilling to interact with the examiner . . . ." (AR 460.) Dr. Sosa diagnosed major depression, moderate and recurrent, with a GAF score over the past twelve months of thirty-nine. (*Id.*)

In addition, several RFC assessments were completed. On August 24, 2007, Janice Kando, M.D., found Gonzalez limited to occasional lifting of twenty pounds, frequent lifting of ten pounds, standing, walking, and sitting for about six hours in an eight hour work day, and unlimited pushing or pulling, but no exposure to hazards like machinery and heights. (AR 451, 454, 457.) She found that the medical records supported the diagnosis of atypical facial pain but that it is unclear whether the claimant has "a true seizure disorder or possible syncopal or other spells." (AR 451-52.) She further stated that the medical records do not support the frequency of seizures alleged by Gonzalez. (AR 452.) However, it is clear that Dr. Kando did not have Dr. Jain's records when she completed this RFC assessment. (*Id.* ("The claimant was placed on Dilantin by Dr. Jain, whose records are not obtainable.").)

A mental RFC assessment by Scott R. Walker, M.D., on January 8, 2008 concluded that

Gonzalez was moderately limited in the abilities to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for long periods, to perform activities within a regular schedule and maintain attendance and punctuality, to work in close proximity to others without distraction, to complete a normal workday and week without interruption from psychological symptoms, to interact appropriately with the general public, co-workers and supervisors, and to respond appropriately to work changes. (AR 555-57.) He concluded that she would require a workplace "with well defined expectations and short/superficial interpersonal interactions." (AR 557.)

ALJ Wendy Hunn held a hearing on June 26, 2009; Gonzalez was represented by counsel and both she and Vocational Expert ("VE") Patricia Cowan testified. (AR 26.) Gonzalez explained that her main problems were seizures and uncontrolled atypical facial pain. (AR 33.) She stated that the pain feels like she has a ruptured eardrum and averages an eight or nine on a scale of one to ten, where ten is the most severe pain imaginable. (AR 34.) She testified that she has one seizure about every two weeks that causes her to collapse and lasts approximately thirty to forty-five minutes. (AR 40.) She described that the seizure causes her to become very fatigued and unable to function, "think straight," speak correctly, or concentrate. (*Id.*) Those effects last eight to ten days. (*Id.*) She described side effects of her medications including fatigue, weight gain, constipation, irritability, and dizziness in the sun. (AR 45-46.) The VE then testified in response to hypothetical questions posed by the ALJ,[4] stating that a person able to perform the full range of light work without climbing ropes, ladders, or scaffolds, without working at unprotected heights or around dangerous machinery, and with no driving could perform Gonzalez's prior work. (AR 59-61.) However, a person with

---

[4] The ALJ's questions and the VE's resulting testimony are not the epitome of clarity, though the questions and responses can be discerned. (*See* AR 58-66.)

those restrictions and an additional limitation of one, two or three step tasks could not. (*Id.*) Instead, that individual could work as an office cleaner, garment sorter or assembler. (AR 61.) Finally, the VE testified that a person with the totality of the functional limitations alleged by Gonzalez could not perform any work existing in the national economy. (AR 61–65.) At the conclusion of the hearing, the ALJ indicated that she would send Gonzalez for an additional consultative neurological examination and that she would send interrogatories to a psychiatric examiner. (AR 66-68.)

Following the hearing, the ALJ did not send Gonzalez for a neurological examination but she did send interrogatories to Dan Hamill, Ph.D. (AR 702-704.) Dr. Hamill diagnosed moderate and recurrent major depressive disorder and generalized anxiety disorder based on a review of the record. (AR 702.) He stated that "GAFs of 50-60 do not satisfy requirements . . ." of the listings and found that the consultative examiner's GAF score of thirty-nine was not supported. (AR 703.) He concluded that Gonzalez should be limited to low stress activity with "1-2-3 step simple repetitive tasks[,]" only incidental public contact, and no forced pace activity. (AR 704.)

## ALJ AND APPEALS COUNCIL DECISIONS

The ALJ denied Gonzalez's applications on October 26, 2009. (AR 11-22.) She determined that she met the insured status requirements and had not engaged in substantial gainful activity since her alleged onset date. (AR 13-14.) She found that Gonzalez has severe impairments of "status post tooth extraction with atypical facial pain; possible seizure activity;[5] sleep apnea; major depressive disorder, moderate and recurrent; and generalized anxiety disorder[.]" (AR 14.) However, none of the impairments or the combination of impairments met or equaled a listing. (*Id.*) To make that

---

[5] Though Gonzalez does not contest the ALJ's step two findings, I note that the ALJ's statement that Gonzalez has a severe impairment of "possible seizure activity" is nonsensical. Stating that a condition is "possible" indicates that it may not exist, and a condition that may not exist cannot constitute a severe medical impairment. This issue should be remedied upon remand.

determination, the ALJ stated that Gonzalez is not restricted in activities of daily living because her "mental problems are directly related to her physical conditions and do not cause limitation in activities of daily living[.]" (*Id.*) She also stated that Gonzalez has mild difficulties in social functioning though "the evidence does not reflect any conflict or difficulty dealing with others." (*Id.*) Finally, she found that Gonzalez has moderate difficulties in concentration, persistence or pace. (AR 15.) The ALJ explained that these findings are not an RFC assessment and that the RFC assessment itemizes in a more detailed manner the various functions contained within these broad categories. (*Id.*)

The ALJ then determined Gonzalez's functional abilities despite her limitations. She found that Gonzalez has a full capacity for light work with additional restrictions of not working at unprotected heights or in the presence of dangerous machinery. (AR 15.) She further limited Gonzalez to work involving simple, one to three step tasks that are routine in nature. (*Id.*)

To render this RFC decision, the ALJ first assessed Gonzalez's credibility. (AR 16.) She found that the statements by Gonzalez and her husband about the severity and limiting effects of her impairments were "not credible to the extent they are inconsistent with the [RFC] . . . ." (AR 16.) She determined that Gonzalez's mental issues are "strongly tied to her physical problems" so are not "separate and distinct . . . ." (*Id.*) She stated that the depression and anxiety have responded well to treatment and that Gonzalez's GAF scores "reflect moderate limitations rather than the serious problems alleged[.]" (*Id.*) She cited to Dr. Hamill's responses and opinions as support for these findings. (AR 17.) Regarding her pain, the ALJ stated that Gonzalez continued to work with the pain for at least two years, that diagnostic testing has been negative, that Botox injections give her relief, and that she may be dependent on her pain medications as factors supporting her conclusion. (*Id.*) Reaching the seizure disorder, the ALJ stated that "the evidence is inconsistent with the frequency

and severity of symptoms alleged." (*Id.*) Facts cited in support include that an EEG was normal, a brain MRI did not show epileptic activity, and there have not been "frequent emergency room visits, which would be expected for the severity of seizure activity complained of." (*Id.*)

The ALJ then reviewed the opinion evidence in Gonzalez's case. She stated that she gave the opinion of Dr. Jain[6] little weight because it was "inconsistent with the whole of the objective evidence[,]" used a "pre-printed form[,]" was not part of the "actual treatment records[,]" presented little more than "a conclusion on the ultimate issue of disability," and did not "speak to true functional limitation." (AR 17-18.) She also gave the consultative examiner's opinion little weight because Gonzalez's cooperation was questionable and the low GAF score assigned was "not in line with the other GAF scores in the record[.]" (AR 18.) She gave Dr. Hamill's opinions great weight, though she did not credit his opinion regarding public contact because "the evidence does not establish difficulty dealing with others[.]" (*Id.*) She found all remaining opinions consistent with the evidence. (*Id.*)

The ALJ found that Gonzalez can not return to her past relevant work because it requires greater exertion and more complex tasks than she can perform. (*Id.*) Based on Gonzalez's age, education, work experience, and RFC, the ALJ concluded that Gonzalez could complete other work in the national economy. (AR 18-19.) Specifically, based on the testimony of the VE that she found consistent with the Dictionary of Occupational Titles, Gonzalez could work as an office cleaner, garment sorter, and assembler. (AR 19.)

Gonzalez requested that the Appeals Council review the ALJ's decision on November 23, 2009. (AR 6-7.) The Appeals Council denied Gonzalez's request for review. (AR 1-3.) Thus, the

---

[6] The ALJ incorrectly referred to Dr. Jain as "Jain Pawan, M.D." (AR 17.)

ALJ's decision became the final decision of the Commissioner.

## ANALYSIS

Gonzalez attributes multiple errors to the ALJ, each of which could require reversal of the ALJ's decision and remand to the SSA. Her first claim of error is that the ALJ failed to apply the correct legal standards in evaluating the opinion Dr. Jain, a treating physician. She asserts that, after the ALJ determined that Dr. Jain's opinion was not entitled to controlling weight, she failed to analyze the appropriate factors and sufficiently explain her reasons for according Dr. Jain's opinion little weight. I agree. Because this error is dispositive, I need not reach the other claims of error.[7]

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's impairments if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citations omitted); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion fails to satisfy one of these conditions, the opinion is not entitled to controlling weight, but it is still entitled to deference and must be weighed using several factors. *See Langley*, 373 F.3d at 1119; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

---

[7] Though I do not reach these claims, I note that Gonzalez's other claims of error include that the ALJ improperly accorded great weight to a non-treating and non-examining physician's opinion, failed to account for Gonzalez's moderate limitation in concentration, improperly minimized Gonzalez's severe impairments of depression and anxiety, failed to consider the side effects of Gonzalez's medications on her functioning, posed a broad and unspecific hypothetical to the VE, failed to confirm the VE's familiarity with the Dictionary of Occupational Titles, and improperly assessed her credibility. (Doc. 17 at 9-21.)

> which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

The ALJ is not required to expressly address each factor, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), but the record must reflect that she considered each of the factors. *Andersen v. Astrue,* 319 F. App'x 712, 718-20 (10th Cir. 2009) (unpublished). The ALJ's articulation of reasons must be sufficiently specific to make clear to subsequent reviewers the weight given the opinion and the reasons for assigning that weight. *Watkins*, 350 F.3d at 1300 (citations omitted). In other words, to demonstrate that she considered the factors, the ALJ's discussion must include specific, legitimate reasons for the weight accorded to the opinion.

Once the ALJ determined that Dr. Jain's opinion was not entitled to controlling weight, a decision that Gonzalez does not challenge, the ALJ was required to consider all of the factors, determine what weight to accord the opinion, and articulate specific reasons for that decision. She decided to accord the opinion little weight, and she did state some reasons for her decision. Specifically, she found that it was inconsistent with the whole of the evidence, that it was written on a pre-printed form, that it was not a treatment record, and that it did not speak to "true functional limitation." (AR 17-18.) Clearly, the ALJ did not discuss all of the factors enumerated above. She cannot be faulted for that, since Tenth Circuit precedent does not require it. She can, however, be faulted for failing to demonstrate that she considered the factors, for failing to point to any specific evidence to support her statements, and for attempting to support her decision with illegitimate and unsupported considerations.

Much as in *Langley*, the ALJ provided a facially valid reason for not giving Dr. Jain's opinion much weight: that it was not consistent with the objective medical evidence in the record.

12

*See* 373 F.3d at 1121-22.[8] However, as in *Langley*, she did not explain what the inconsistent evidence was. *See id.* at 1122. Furthermore, I have thoroughly reviewed the record and find no inconsistencies between Dr. Jain's opinion and the other medical evidence of record. The only evidence that supports lesser functional limitations is Dr. Kando's RFC assessment.[9] Dr. Kando did not examine Gonzalez and did not have the benefit of reviewing Dr. Jain's records; without either an examination or the records from the doctor who diagnosed and treated Gonzalez's physical impairments, Dr. Kando cannot purport to define Gonzalez's functional limitations. Thus, Dr. Kando's assessment cannot constitute other medical evidence inconsistent with Dr. Jain's opinion. The ALJ failed to explain or identify the claimed inconsistencies between Dr. Jain's opinion and the other medical evidence in the record. Consequently, her reasons for rejecting the opinion are not sufficiently specific to provide me an opportunity to meaningfully review her findings. *See Langley*, 373 F.3d at 1123 (citation omitted).

The ALJ's other rationales for dismissing the opinion do not lend support to her conclusion. The fact that the opinion was provided using a pre-printed form has no relationship to the weight that is due to the opinion. Dr. Jain went through the form, described his treating relationship with Gonzalez and his diagnoses, and indicated his conclusions regarding Gonzalez's functional abilities and the reasons he reached those conclusions. Furthermore, the opinion provides much more than a conclusion on the ultimate issue; it states specific functional limitations. While the conclusion on

---

[8] In *Langley*, the ALJ erred in determining whether or not to afford the treating physician opinion controlling weight rather than, as here, in determining the appropriate non-controlling weight. 373 F.3d at 1121-23.

[9] The assessments by Drs. Walker, Sosa and Hamill were all focused on Gonzalez's functional limitations resulting from her mental impairments and did not address her limitations resulting from atypical facial pain or seizure disorder.

the issue of disability is certainly reserved to the Commissioner, the ALJ may not entirely disregard the specific functional limitations set out by the treating physician without specifically explaining valid reasons for doing so.

The ALJ's analysis of Dr. Jain's opinion is fundamentally flawed, and remand is required. There is no other opinion by a neurologist in the record and no clear medical evidence from an examining source or a source that considered the full medical record that contradicts Dr. Jain's opinion. On remand, the ALJ must demonstrate that she considered each relevant factor and may only consider legitimate factors supported by the evidence in determining what weight to accord Dr. Jain's opinion.

## RECOMMENDATION

For the foregoing reasons, it is ordered that the Plaintiff's motion (Doc. 17) is GRANTED, that the decision of the Commissioner is REVERSED, and that this case be REMANDED to the Agency for further proceedings consistent with this Order.

William P. Lynch
United States Magistrate Judge
*Presiding by Consent*

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.